The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and arguments on appeal. Prior to arguments before the Full Commission defendant filed a Motion to Dismiss plaintiffs appeal for failure to perfect. However, the Full Commission will determine this matter on its merits and Defendants Motion is hereby DENIED. The appealing party had not shown good ground to reconsider the evidence, receive further evidence or to rehear the parties or their representatives. Accordingly, Plaintiffs Motion for a New Hearing and his Motion for Reconsideration are hereby DENIED. Pursuant to it authority under G.S. 97-85, the Full Commission has made some non-substantive modifications to the findings of fact, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement, filed 24 March 1999, and at the hearing of the same date as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was self-insured with Specialty Risk Services, Inc., as the third-party administrator.
3. An employment relationship existed between the parties at all times relevant hereto.
4. Plaintiffs average weekly wage was $863.20, which yields a compensation rate of $532.00
5. The issues for determination are:
 a. Did plaintiff sustain an injury as a result of a specific traumatic injury to his back on or about 3 June 1998?
 b. Did plaintiff sustain an injury as a result of a specific traumatic injury to his back on or about 29 June 1998?
 c. If plaintiff sustained a compensable injury, is he entitled to temporary total disability benefits from 11 July 1998 and continuing for necessary weeks?
 d. If plaintiff sustained a compensable injury, is he entitled to medical treatment?
 e. Were the medical services of Richard Escajeda, M.D.; William R. Brown, Jr., M.D.; Forsyth Memorial Hospital; and Piedmont Anesthesia and Pain consultants reasonably required to effect a cure, provide relief or lessen the period of disability and should the defendant pay for these services?
 f. Whether the condition for which plaintiff seeks compensation is causally related to the alleged incidents of 3 June 1998 or 29 June 1998?
6. The parties stipulated one hundred and twelve pages of documentary evidence, marked as Stipulated Exhibit (1), into the record.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 24 March 1999, plaintiff was a fifty-nine year old married male. Plaintiff began working for defendant on 18 February 1969 as a long distance truck driver.
2. On 10 February 1992, plaintiff was admitted to Forsyth Memorial Hospital after a six-week history of low back pain radiating down the anterior lateral and posterior aspect of his left leg to his ankle. Dr. William Brown, Jr., ordered diagnostic testing for a suspected lateral disk herniation at L4-5. Dr. Brown performed a lumbar hemilaminectomy at left L4-5 and a left medial facetectomy at L4-5 on 13 February 1992. Following the surgery, plaintiff reported his leg pain had resolved, and he was discharged from the hospital on 14 February 1992.
3. Plaintiff was released to return to work without restrictions by Dr. Brown on 26 April 1992.
4. On 5 April 1994, plaintiff returned to Dr. Brown with complaints of a gradual onset of left hip and left leg pain. Plaintiff reported using crutches to walk and of having pain in the right leg also. Plaintiff was diagnosed with a herniated nucleus pulposus at L3-4. Dr. Brown excused plaintiff from work through 25 April 1995 and recommended surgery.
5. In December of 1997, plaintiff asked his employer to reassign him from a trip to Michigan due to his back.
6. On 3 June 1998, plaintiff was driving his tractor-trailer. As he turned on the I-85 ramp, the trailer came loose and fell to the right. The right passenger side of the cab was damaged when the trailer struck it.
7. State Trooper E. C. Smith investigated this accident. Plaintiff reported to Trooper Smith that he did not need medical care as a result of the incident. Trooper Smith prepared an Accident Report which reflected there were no injuries as a result of this accident. Trooper Smiths report also reflected that there was only one person in the truck at the time of the accident, based upon what plaintiff reported to him.
8. Joseph Barnes, a maintenance machinist with defendant, went to the scene of the accident to cut the pins from the landing gear so the wrecker could move the trailer.
9. On 3 July 1998, plaintiff spoke with Ray Dennis and Steve Harrison.
10. After the accident, plaintiff drove the cab back to the plant. Defendant sent him to Med Zone drug and alcohol testing, in accordance with company policy. Also per company policy, plaintiff was not permitted to drive a load until the test results came back. On 9 June 1998, plaintiffs negative test results were reported and he was assigned a trip.
11. At the hearing before the Deputy Commissioner on 24 March 1999, plaintiff testified that his wife was in the sleeper compartment at the time of the accident. Plaintiffs wife, Mrs. Doris Decker, testified she left the scene after the accident because she had a cold sore and went to the store. Plaintiff testified he told her to leave the cab before anyone arrived because he did not want to get his supervisor in trouble, even though he said he had permission to take her on the trip. Because of the inconsistencies regarding this testimony, it is given little weight by the Full Commission.
12. Plaintiff contends he told his supervisor that he had back pain after the accident. Plaintiff said that he called Dr. Browns office but was told no appointment was available for two months. This testimony not accepted as being credible.
13. On 23 June 1998, plaintiff was examined by his family doctor, Dr. Richard Escajeda, for cough, headache, nose bleeds and ear ringing per the medical records. Plaintiffs testimony that he went to Dr. Escajeda on 23 June 1998 due to his back pain is not accepted and is not corroborated by the medical evidence.
14. Plaintiff took vacation leave from 31 June 1998 through 8 July 1998. While on vacation at Holden Beach, plaintiff contends he had to see a doctor and had to use crutches to walk. However, no medical evidence was offered to reflect any visit to a medical provider during this vacation for back pain.
15. Plaintiff last worked for the defendant on 10 July 1998. When plaintiff saw Sharon Armstrong, defendants Human Resources Manager, on 20 July 1998 for the filing of his medical leave of absence, he reported that his back pain was a work-related injury which started on 29 June 1998 while untarping the truck. Plaintiff prepared a written statement to that effect.
16. On 20 July 1998, plaintiff reported to Ms. Armstrong that he had another ruptured disc and that his back had begun hurting while he was in Ohio.
17. Plaintiff first reported having back pain to Dr. Dennis on July 9, 1998.
18. On 13 July 1998 and 17 July 1998, plaintiff first reported back problems to Dr. Escajeda. However, he did not relate the symptoms to the 3 June 1998 incident.
19. On 15 July 1998, plaintiff told Steve Harrison he was unable to work through 5 August 1998 due to his back. Mr. Harrison prepared leave of absence forms and short-term disability forms. Plaintiff then stated his back injury was a workers compensation injury. After plaintiff reported this, Mr. Harrison sent him to Ms. Armstrong to prepare an accident report.
20. Plaintiff first filed a Form 18 on 15 October 1998.
21. Ray Dennis, a dispatcher with defendant, scheduled plaintiffs trips. Plaintiff periodically complained of back pain to him. Mr. Dennis adjusted plaintiffs schedule due to his back pain over the years. Plaintiff did not have to load the truck.
22. Plaintiff did not report the alleged 29 June 1998 tarping incident to defendant until 15 July 1998. For plaintiff to remove the tarp, plaintiff would turn a crank at dock level.
23. Mr. Harrison, a materials manager with the defendant, was plaintiffs supervisor on 3 June 1998.
24. It was not until his recorded statement on 6 August 1998 that plaintiff related his back pain to the 3 June 1998 incident in the truck.
25. On 17 July 1998, plaintiff returned to Dr. Escajeda, at which time he complained of low back pain. However, plaintiff did not relate a history of either the 3 June 1998 incident or the 29 June 1998 tarping as causing his back pain.
26. On 5 August 1998, plaintiff returned to Dr. Brown for back and leg pain. At that time, plaintiff reported his pain began after the 3 June 1998 accident. An MRI revealed degenerative disc disease at L3-4 and L4-5 with scar tissue formation. Dr. Brown did not recommend additional surgery for plaintiffs condition. However, there is no evidence to causally relate this impairment to the 3 June 1998 accident or the alleged incident on 29 June 1998.
27. Dr. Brown found plaintiff to be at maximum medical improvement on 26 January 1999, retaining a ten percent (10%) permanent partial impairment to his back.
28. There is no competent medical evidence to causally related plaintiffs back problems to the 3 June 1998 accident.
29. Plaintiff did not give timely written or oral notice of his alleged back injury from the 3 June 1998 accident. To the contrary, plaintiff denied any injury to Trooper Smith or to any of his supervisors or coworkers on 3 June 1998 when the incident was being investigated.
30. There is likewise no competent medical evidence to causally relate plaintiffs back problems to any alleged tarping incident on 29 June 1998.
31. Plaintiffs assertions that Ms. Armstrong would not let him file for workers compensation are rejected. Because defendant is self-insured, it would pay for plaintiffs time out of work through either the short term disability program fund or their workers compensation fund.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. While plaintiff was involved in a motor vehicle accident on 3 June 1998, plaintiff did not sustain any injury at that time. G.S.97-2(6).
2. Plaintiff likewise did not sustain a compensable injury on 29 June 1998. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim for benefits is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/______________ RENE C. RIGGSBEE COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER